77 F.3d 488
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
The BRYANT CORPORATION, a Washington corporation, Plaintiff-Appellant,
v.
OUTBOARD MOTOR CORPORATION, a Delaware corporation,
Defendant-Appellee.
 No. 95-35095.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 4, 1995.
Decided Feb. 6, 1996.
 
 1
 Before: D.W. NELSON and NOONAN, Circuit Judges, WARE, District Judge*.
 
 
 2
 MEMORANDUM**
 
 STATEMENT OF THE CASE
 
 3
 The Bryant Corporation ("Bryant") appeals summary judgment of its claims for violation of the Washington Franchise Investment Protection Act (FIPA) and negligent misrepresentation in favor of Outboard Motor Corporation ("OMC"), the manufacturer of Evinrude motors and associated parts. We AFFIRM the grant of summary judgment for both claims.
 
 
 4
 For some 45 years Bryant has distributed OMC and Evinrude products in the Pacific Northwest, signing nonnegotiable one-year distributor agreements with OMC for about the last 30 years. Among payments Bryant made as distributor was $6,043.50 to OMC in 1980 for training of retail dealers. Bryant also reimbursed OMC $48,016.55 for 1992 and 1993 Washington state business and occupation taxes which OMC had already paid.
 
 
 5
 Before establishing an employee stock option plan in 1991 (the "Plan") Bryant met with OMC to discuss the Plan but received no direct response to its questions at the meeting as to whether OMC was contemplating changes in distribution for the Northwest and Alaska. However, OMC sent Bryant a letter dated May 21, 1991 agreeing to waive certain contractual termination-upon-stock-transfer provisions as applied to the proposed Plan. The letter stated:
 
 
 6
 this does not constitute a commitment by OMC to extend the term of the Distributor Agreement beyond its expiration date of September 30, 1991. In this rapidly changing industry, OMC must continually assess its methods of doing business.
 
 
 7
 Subsequently Bryant and OMC entered into distributor agreements annually for 1992 and 1993.
 
 
 8
 In June 1993, OMC gave Bryant 90 days' notice that its contract would not be renewed. By its terms neither party was obligated to renew the 1993 contract upon expiration, regardless of performance on either side.
 
 DISCUSSION
 
 9
 A grant of summary judgment is reviewed de novo and is not proper if material factual issues exist for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995).
 
 A. Franchise Act (FIPA) Claims
 
 10
 Payment of a franchise fee is one of the three elements a company must show to qualify as a franchise under FIPA. R.C.W. 19.100.010(4), Blanton v. Texaco Refining and Marketing, Inc., 914 F.2d 188, 190 (9th Cir.1990). Of the three elements the district court reached only the franchise fee issue, properly finding that neither the training fee nor tax reimbursements Bryant paid to OMC qualify as franchise fees and that consequently Bryant cannot claim protection under FIPA.
 
 FIPA defines a franchise fee as:
 
 11
 any fee or charge that a franchisee ... is required to pay or agrees to pay for the right to enter into a business or to continue a business under a franchise agreement, including, but not limited to ... any payment for goods of services or any payment for goods or services available only from the franchisor, or any training fees or training school fees or charges; however, the following shall not be considered payment of a franchise fee: (a) the purchase or agreement to purchase goods at a bona fide wholesale price; ..." R.C.W. 19.100.010(12)
 
 
 12
 Bryant's reimbursements to OMC for business and operation taxes which OMC had paid to the state of Washington do not amount to franchise fees. FIPA specifically excludes from franchise fees "the purchase or agreement to purchase goods at a bona fide wholesale price." R.C.W. 19.100.010(12)(a). Paragraph 6 of the 1992 and 1993 distributor agreements was entitled "PRICE TO DISTRIBUTOR" and obligated Bryant to pay such taxes if OMC requested Bryant to do so. Bryant agrees that it paid a wholesale price for OMC's products. Bryant's agreement to pay OMC's taxes as provided in the distributor agreements contemplated that any such taxes were to be considered part of the wholesale price paid by Bryant. There is no genuine issue of material fact to be decided regarding the tax reimbursement.
 
 
 13
 As to Bryant's payment of $6,043.50 to OMC in 1980 for retail dealer training expenses there is also no genuine issue of material fact. The parties agree that the fee was for training actually provided to Bryant's retail dealers and was thus merely an ordinary business expense for services rendered. Wright-Moore Corp. v. Ricoh Corp., 980 F.2d 432, 436 (7th Cir.1992). Neither Bryant's reimbursement of the taxes nor its payment of the training fee was required by OMC for Bryant's right to enter into or continue in business with OMC. Neither payment qualifies as a franchise fee under R.C.W. 19.100.010(12).
 
 B. Negligent Misrepresentation Claims
 
 14
 The Washington courts analyze negligent misrepresentation in terms of the Restatement (Second) of Torts § 552(1), (2) (1977), Colonial Imports Inc. v. Carlton Northwest, Inc., 121 Wash.2d 726, 731, 853 P.2d 913, 916 (1993) (en banc). The Restatement makes liable for pecuniary loss
 
 
 15
 One who, in the course of his business, profession, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions ..." Haberman v. Washington Public Power Supply System, 109 Wn.2d 107, 161-62, 744 P.2d 1032, 1067 (1987), amended, 750 P.2d 254 (1987) (en banc).
 
 
 16
 In Burgess v. Premier Corp., 727 F.2d 826 (9th Cir.1984), this court referred to J & J Food Centers Inc. v. Selig, 76 Wn.2d 304, 309, 311, 456 P.2d 691, 695 (1960) for the elements of negligent misrepresentation in Washington: "false statements, made to induce a sale, which are relied on by the person asserting damages, and which that person may justifiably rely upon." J & J, 456 P.2d at 695.
 
 
 17
 Bryant alleges that OMC materially omitted to disclose at the April 1991 meeting or in the May 1991 letter that OMC was contemplating termination of Bryant's distributorship. Making all reasonable inferences in favor of Bryant, OMC could not have said with certainty in April or May 1991 that it planned to terminate Bryant in the next few years. Further, the May 21 letter made no guarantees as to renewal. The district court properly found that there was no misrepresentation of Bryant's position at the time of May 21, 1991 letter.
 
 
 18
 AFFIRMED.
 
 
 
 *
 The Honorable James Ware, United States District Judge for the Northern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3